## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SUSAN ISBERNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| WALMART INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

For her Complaint against Defendant Walmart Inc., Plaintiff Susan Isberner states and alleges as follows:

### I.    NATURE OF THE ACTION

1.    This is an action for employment discrimination brought to secure legal and equitable relief for injuries sustained by Plaintiff as a result of Defendant's discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e, *et seq*. ("Title VII") for gender discrimination; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

2.    Defendant Walmart Inc. ("Defendant" or "Walmart") unlawfully discriminated and retaliated against Plaintiff based on her gender, age, and disability, creating an intimidating, offensive, and hostile work environment, and affecting the terms and conditions of her employment.

3.    Plaintiff seeks compensatory, liquidated and punitive damages, as well as reasonable attorneys' fees and costs, as remedies for Defendant's violation of her rights.

## II.    PARTIES

4.      Plaintiff Susan Isberner is a citizen of Kansas who worked for Walmart as a Market Human Resources Manager in Kansas from approximately February 2008 until she was constructively discharged in March 2019.

5.      Defendant Walmart Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

6.      At all times relevant herein, Defendant had at least 15 employees, and was therefore an "employer" within the meaning of Title VII, the ADEA, and the ADA.

7.      Walmart is a corporation and can only act through its officers and employees, and the conduct of an officer or employee acting within the scope of his or her employment or authority is the conduct of the corporation.

8.      Walmart is liable for the acts of its officers and employees, including, but not limited to, Market Manager Chad Rohr and Plaintiff's supervisor, Heidi Palmer.

9.      Plaintiff is informed, believes, and thereon alleges that at all times relevant herein, Rohr and Palmer were responsible for the sex, age and disability discrimination, as well as the retaliation, alleged in this Complaint since they were managers for Walmart.

10.      Rohr and Palmer had supervisory authority over Plaintiff, and she is informed, believes, and thereon alleges that at all times relevant herein, Rohr and Palmer made decisions affecting the terms and conditions of her employment.

## III.    JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as this case involves questions of federal law.

12.     This Court is a proper venue under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant is subject to this Court's personal jurisdiction by maintaining facilities and business operations in this District, and because the events and unlawful employment practices giving rise to this action occurred in this District.

## IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") pursuant to 42 U.S.C. § 2000e-5(b), a copy of which is attached hereto as Exhibit 1.

14.     On or around October 3, 2019, the EEOC issued Plaintiff a Notice of Right to Sue, a copy of which is attached hereto as Exhibit 2.

15.     Plaintiff has complied with all administrative prerequisites to bringing this lawsuit and has timely filed this action.

## V.     FACTUAL BACKGROUND

16.     Defendant hired Plaintiff, a female, in or around February 2008, when she was 55 years of age. As of the date of this filing, she is 66 years old. Plaintiff suffers from depression, Addison's disease, and alcoholism. Addison's disease is a disorder in which adrenal glands are damaged due to an autoimmune response and thus do not produce enough hormones that are vital to the body's working endocrine system. This disease causes her to be extremely fatigued, weak, dehydrated, slow, and dizzy, have sluggish movement, and experience weight loss.

17.     Plaintiff worked for Walmart until approximately March 2019 as a Market Human Resources Manager. She oversaw 12 stores in Kansas and one store in Oklahoma.

18.     Plaintiff was responsible for communication and implementation of Walmart's human resources ("HR") initiatives, including HR practices, business plans, systems and personnel-related issues, across multiple facilities. She also provided training, growth, and development to Store Managers. Her key stakeholders were the company's Store Managers, Market Managers, and Regional Leadership. Collaboration was critical amongst these roles.

19.     At all times during her employment, Plaintiff more than adequately performed her employment duties. She received excellent performance reviews until the events alleged herein and was never disciplined.

20.     At all times relevant to this action, Rohr and Palmer had authority over Plaintiff and were employees of Walmart. Rohr was the Market Manager in Plaintiff's market and made decisions affecting the terms and conditions of her employment. He provided key feedback to Plaintiff's direct supervisor, Palmer.

21.     One of Plaintiff's primary job duties was to provide support to Rohr. In addition, she and Rohr were expected to work closely together to support and evaluate 13 Store Managers in their Market.

22.     Rohr did not like women having positions of power and regularly treated women significantly worse than their male counterparts. Rohr actively worked to remove female Store Managers from their positions. He would demean and belittle female Store Managers, saying they were performing poorly and advocating firing them without helping them improve. However, when it came to male Store Managers, Rohr would invest significant amounts of time helping them either create an improvement plan or move to another position.

23.     Rohr regularly referred to Isberner as "that crazy HR lady" or simply "crazy" in large meetings and during conference calls to demean her role as a woman in the workplace.

24.     Rohr also regularly made comments to Isberner about how close she was to his mother's age, which he said made him uncomfortable.

25.     In or around November 2016, Rohr began introducing Isberner at meetings by referencing "The Most Interesting Man in the World" beer advertisements. He repeatedly used this phrase to reference the fact that Plaintiff was a recovering alcoholic, despite the fact she has been sober 20 years. Rohr also made comments to others in the workplace that "he didn't trust people who don't drink" alcohol.

26.     Rohr also stopped participating in the execution of several of Plaintiff's initiatives, which significantly hurt her ability to effectively accomplish her job duties and exercise control over the employees under her supervision.

27.     The harassment from Rohr only increased as time went on. Throughout 2017 and until her last day of employment in March 2019, Rohr's constant verbal abuse left her feeling unsafe, extremely stressed, and fearful for her job.

28.     For example, on or about June 16, 2018, a meeting was held in Dodge City, Kansas. Plaintiff attended with Rohr and the Store Managers in the market she regularly worked with. During this meeting, Rohr verbally attacked Plaintiff during her presentation, continuously interrupting her, and speaking over her despite her asking him several times to stop. He also accused Plaintiff of throwing employees under the bus, and claimed she was lying because she had allowed hourly coordinators whom she supported to voice their concerns about management's shortcomings.

29.     In or about the fall of 2018, Plaintiff received questions and concerns from managers that Rohr was having an affair with a Walmart employee. As a Market Human Resources Manager, it was Plaintiff's job to elevate the allegations if they were true, since an inter-company

affair is a violation of company policy. To ensure she handled the investigation properly, Plaintiff contacted Jeff Livingston, a fellow Human Resources employee, in confidence. Before she could determine whether she had enough information to escalate to her supervisor for investigation, however, Rohr angrily and hysterically confronted Plaintiff.

30.     Plaintiff complained several times to her immediate supervisor, Palmer, about the way Rohr treated her. Palmer said little other than asking Plaintiff what she was going to do about it. Palmer dismissed Plaintiff's complaints of gender, age, and disability discrimination despite Plaintiff's explanations that she felt unsafe and afraid.

31.     Eventually, Palmer stopped answering Plaintiff's emails and telephone calls.

32.     After Plaintiff complained about Rohr's discriminatory treatment, Defendant removed her from a long-term project involving women in leadership that she had been working on for the past five years, which interfered with her ability to effectively perform her job duties.

33.     The situation at Walmart was so stressful, and the environmental so hostile, that Isberner suffered from depression and insomnia. Isberner was so stressed she did not feel she could even take time off work to attend her mother's funeral.

34.     On February 19, 2019, after repeatedly complaining to Palmer about her discrimination and the hostile work environment she was facing, Plaintiff received a substantially lower annual performance evaluation than previous years, without explanation. This was particularly suspect since Walmart had not given Plaintiff any feedback during the year to indicate that her evaluation may be downgraded.

35.     During this performance evaluation, Palmer also removed Plaintiff from a racial discrimination investigation involving one of Rohr's favorite male Store Managers. Palmer said this was done because one of Plaintiff's interviews caused a "huge uproar." Plaintiff had asked

Rohr to be a witness to the investigation so she could ensure it was handled adequately, but Rohr wanted to protect his male Store Manager from being investigated. Plaintiff complained to Palmer about this situation, but as usual, Palmer did nothing. Because Palmer refused to give Plaintiff any specifics, she believes the actual reason she was removed from the investigation was based on the discrimination alleged herein.

36.     Two additional sexual harassment claims were revealed from an interview Plaintiff conducted with a Walmart employee during her investigation of the racial discrimination above. However, because of Defendant's actions, Plaintiff felt too intimidated to report these claims, demonstrating once again that she was prevented from effectively doing her job.

37.     On or about March 5, 2019, Plaintiff requested a meeting with Rohr since Palmer was not assisting her or curing the hostile work environment she was facing. But Rohr refused to meet her. And subsequently, Rohr did not return Plaintiff's phone calls, and only occasionally responded to her via text message. This lack of communication with Rohr made it very difficult for Plaintiff to complete her job duties.

38.     Rohr's unwillingness to work with Plaintiff also made it impossible for her to implement her initiatives. His lack of communication with Plaintiff continued to undermine her individual progress.

39.     On or about March 11, 2019, after a staff meeting, Plaintiff again asked Rohr to speak in private to discuss his behavior. Rohr again refused, and in front of Plaintiff's coworkers, he verbally attacked her calling her a liar, and said Livingston told him Plaintiff started the rumor of his alleged affair. Rohr further humiliated Plaintiff, accusing her of lying about the racial discrimination investigation into his male Store Manager that she was removed from.

40.     Plaintiff felt physically ill with distress over the continuous animosity and abuse she regularly received from Rohr. Plaintiff could not conceive how she could continue to tolerate the abuse. She had previously returned from FLMA leave due to pneumonia, common to those with Addison's disease.[1]

41.     Plaintiff did not believe Palmer, Livingston or anyone else she closely worked with would be honest or assist in any investigation of Rohr; therefore, Plaintiff did not initiate an investigation against him.

42.     Rohr's continual harassment increased with time until it became so severe and pervasive that Plaintiff had no choice but to resign in the spring 2019.

## VI.     CLAIMS FOR RELIEF

### COUNT I
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e ("Title VII")**

43.     Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

44.     Plaintiff, who is female, is a member of a protected class within the meaning of Title VII.

45.     Defendant is a covered entity and an employer as defined in Title VII in that it is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

---

[1]Plaintiff took FMLA leave in 2013 and 2014 because of her Addison's disease. She was hospitalized on or about February 15, 2017 for an Addison's disease crisis and major depression. She was hospitalized again in or around February 2018 for an Addison's disease crisis with depression and anemia. Plaintiff also took FMLA leave from approximately February 25, 2019 to March 13, 2019 for bacterial pneumonia.

8

46.     Plaintiff is a female who was treated less favorably than one or more of her male counterparts.

47.     Plaintiff's gender was a factor in Defendant's discriminatory actions, inactions, decisions, constructive discharge, and/or conduct as alleged herein.

48.     Defendant's discriminatory actions, inactions, decisions, constructive discharge, and/or conduct affected the compensation, terms, conditions, and/or privileges of Plaintiff's employment as described herein.

49.     Defendant's discriminatory actions, inactions, decisions, constructive discharge, and/or conduct deprived Plaintiff of employment opportunities or otherwise adversely affected her status as an employee because of her gender.

50.     Defendant's actions, inactions, decisions, constructive discharge, and/or conduct constituted unlawful employment discrimination against Plaintiff in violation of Title VII.

51.     Defendant's actions, and/or inactions occurred by and/or through its agents, servants, and/or employees acting with the course and scope of their employment.

52.     Defendant's continuing pattern of offensive conduct permeated the workplace with discriminatory intimidation, ridicule, and insult, and the offensive conduct was severe and pervasive enough to a work environment that a reasonable person would consider intimidation, hostile, or abusive.

53.     Defendant and its management were aware of the continuing harassment by Rohr, yet they failed to take reasonable steps to prevent and/or promptly correct the harassing behavior.

54.     Plaintiff took reasonable advantage of the preventive and corrective opportunities available to cease Rohr's pattern of harassment.

55.     As a direct, legal, and proximate result of this discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

56.     Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on gender such that she is entitled to an award of punitive damages.

57.     Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit.

### COUNT II
**Age Discrimination in Violation of
The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA")**

58.     Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

59.     Plaintiff was 66 years old at the time Defendant forced her to resign, and therefore a member of the protected class of age in that she is at least 40 years of age.

60.     Defendant is an employer as defined in the ADEA in that it is engaged in an industry affecting commerce that has 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

61.     Plaintiff was subjected to age discrimination and/or subjected to a hostile work environment at the hands of Defendant and/or Defendant's agents and subordinates, in that Defendant permitted Rohr and Palmer to discriminate against her because of her age.

62.     Plaintiff's age was a factor in her discrimination and hostile work environment; all performance issues alleged by Defendant were merely pretext.

63.     The age discrimination materially affected a term, condition, or privilege of Plaintiff's employment because the conduct was continuous, outrageous, humiliating, and unreasonably interfered with Plaintiff's ability to perform the functions of her employment, ultimately leaving her no choice but to resign.

64.     By not taking any action to stop Plaintiff's supervisors from continuing their ongoing discrimination and harassment against Plaintiff, Defendant ratified, authorized and/or condoned this conduct.

65.     Defendant knew of the discrimination, harassment, and failed to take appropriate action, or any remedial action whatsoever.

66.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

67.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages and injuries.

68.     As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from such conduct in the future.

69.     Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit.

<u>COUNT III</u>
**Disability Discrimination in Violation of**
**The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA")**

70.     Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

71.     Plaintiff is a qualified individual as defined in the ADA in that she was an individual who, with or without reasonable accommodation, could perform the essential functions of her employment as a Market Human Resources Manager.

72.     Defendant is a covered entity and an employer as defined in the ADA in that it is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

73.     Plaintiff suffered from alcoholism, severe depression, and Addison's Disease, while employed by Defendant and continued to suffer pain and limitations through and including the date of her constructive discharge.

74.     Plaintiff's severe depression, Addison's disease, and alcoholism constitute disabilities as defined in the ADA in they substantially limited one or more of her major life activities. Because of her Addison's disease the Plaintiff had trouble standing because of dizziness. Plaintiff's Addison's disease interfered with one or more of her major activities. Addison's disease causes fatigue, nausea, and low blood pressure, making it difficult to carry on everyday activities like driving, walking, and all major life activities.

75.     Plaintiff informed Defendant's personnel of her alcoholism, Addison's disease, and depression.

76.     Defendant forced Plaintiff to resign from her position, which in effect was constructive discharge.

12

77.     Plaintiff's disabilities were a factor in her discrimination and hostile work environment; all performance issues alleged by Defendant were merely pretextual. Defendant harassed Plaintiff until she was constructively discharged in violation of the ADA.

78.     Defendant's discrimination of Plaintiff affected a term, condition and/or privilege of her employment.

79.     Defendant's discrimination of Plaintiff adversely affected her opportunities and status of her employment.

80.     Defendant utilizes standards, criteria, and/or methods of administration that perpetuate the discrimination of others who are subject to common administrative control.

81.     Defendant's discrimination of Plaintiff based on her disabilities denied her employment and benefits.

82.     As a direct, legal, and proximate result of this discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

83.     Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on her disabilities.

84.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## COUNT IV
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a)

85.     Plaintiff restates and re-alleges the above paragraphs as fully set forth in this cause of action.

86.     Plaintiff reported Rohr's conduct to her supervisor, Palmer. Specifically, she told Palmer that she was feeling attacked, and reported Rohr's refusal to communicate to with her.

87.     When Plaintiff complained about the treatment she was receiving, Palmer did little other than to ask Plaintiff what she was going to do about it. Palmer offered no solution or support, and Plaintiff left feeling worse than before.

88.     Palmer then proceeded to remove Plaintiff from a racial discrimination investigation into a male Store Manager that was favored by Rohr.

89.     Plaintiff was illegally retaliated against for participating in the protected activity of opposing discrimination by Defendant who took materially adverse actions against Plaintiff as a direct result of Plaintiff's challenge to discrimination.

90.     Defendant's adverse actions constitute retaliatory harassment, and its actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII, just as Plaintiff was deterred.

91.     After Plaintiff made complaints of Rohr's harassment, Defendant retaliated against Plaintiff by engaging in materially adverse employment actions, including failing to execute her initiatives, taking her off investigations that she had previously been assigned to, and continued verbal degradation.

92.     There was a direct causal link between Plaintiff's complaint about Rohr's harassment leading to an investigation of Rohr, and the retaliation Plaintiff faced which created an even greater workplace hostility that was so intolerable Plaintiff was constructively discharged.

93.     As a direct, legal, and proximate result of this retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

94.     Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation that creates an intimidating, offensive, and hostile work environment for such conduct.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including, but limited to: back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre-and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## VII.    PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable

## VIII.   DESIGNATED PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial in this matter.

Dated:      January 1, 2020                              Respectfully submitted,


                                                          */s/ Jack McInnes*
                                                          Jack McInnes, Bar No. 21898
                                                          Pamela Nagel Jorgensen, Bar No. 27716
                                                          MCINNES LAW LLC
                                                          1900 West 75th Street, Suite 120
                                                          Prairie Village, KS 66208
                                                          Telephone: (913) 220-2488
                                                          Facsimile: (913) 273-1671
                                                          jack@mcinnes-law.com
                                                          pam@mcinnes-law.com

                                                          ATTORNEYS FOR PLAINTIFF