## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| SUSAN ISBERNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 20-2001-JAR-KGG |
| | ) | |
| WALMART, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM & ORDER ON
## MOTION TO COMPEL DISCOVERY

Now before the Court is Plaintiff's Motion to Compel.  (Doc. 22.)  Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

## BACKGROUND

Plaintiff worked for Defendant Walmart from 2008 through 2019 as a Market Human Resources Manager, overseeing 12 stores in Kansas and 1 in Oklahoma.  (Doc. 1, at 3.)  She alleges that she was "responsible for communication and implementation of Walmart's human resources ("HR") initiatives, including HR practices, business plans, systems and personnel-related issues, across multiple facilities."  (*Id*., at 4.)  She further alleges that she "provided training, growth, and development to Store Managers."  (*Id*.)

She contends that Market Manager Chad Rohr and her supervisor Heidi Palmer had authority over her.  (*Id.*)  She continues that Rohr "made decisions affecting the terms and conditions of her employment" and "provided key feedback to Plaintiff's direct supervisor, Palmer."  (*Id.*)

Plaintiff brings this case alleging she was subject to unlawful employment discrimination and retaliation based on sex, age, and disability at the hands of her supervisor, Rohr.  (Doc. 22, at 1.)  Her Complaint also includes allegations that she was removed from a racial discrimination investigation at the Liberal, Kansas store after she complained about the conditions of her employment.  (*Id.*; *see also* Doc. 1, at 7-8.)  She contends the hostile work environment created left her "no choice but to resign."  (*Id.*)  Defendant generally denies Plaintiff's allegations.[1]

The present motion relates to two categories of information sought by Plaintiff:  (1) documents and information regarding similar complaints made against Walmart regional-level managers, market-level managers, and store-level managers within Plaintiff's market from January 1, 2015, through the present; and (2) the search terms Defendant used to gather documents and electronically stored information as to decisions on Plaintiff's performance evaluations, discipline, and/or work assignments.  (*Id.*)

---

[1] Of particular note is Defendant's allegation that Rohr was Plaintiff's co-worker, not supervisor.  The Court will, for purposes of this motion, assume that Rohr was Plaintiff's supervisor.

## ANALYSIS

I.    **Legal Standard for Discovery and Motions to Compel.**

Federal Rule of Civil Procedure 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Relevance is "broadly construed" at the discovery stage.  ***Kimberly Young v. Physician Office Partners, Inc.***, No. 18-2481-KHV-TJJ, 2019 WL 4256365, at *1 (D. Kan. Sept. 9, 2019) (citation omitted).  "Relevant information is 'any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claims or defenses."  *Id.* (quoting ***Rowan v. Sunflower Elec. Power Corp.***, No. 15-cv-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016)) (quoting ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)).

While the scope of discovery is broad, it is not unlimited.  That stated, "[u]nless a discovery request is facially objectionable, the party resisting discovery has the burden to support its objections."  ***Ezfauxdecor, LLC v. Smith***, No. 15-9140-CM-KGG, 2017 WL 2721489, at *2 (D. Kan. June 23, 2017) (citing ***Sonnino v. University of Kansas Hosp. Authority***, 221 F.R.D. 661, n.36 (D. Kan. 2004) (citation omitted)).  Within this context, the Court will address the discovery requests at issue.

## II.     Requests at Issue.

The discovery requests at issue relating to similar complaints made against Walmart regional-level managers, market-level managers, and store-level managers within Plaintiff's market are Interrogatories Nos. 2 and 4, and Request for Production No. 7.  Those discovery requests and Defendant's responses are summarized and/or included *infra*.

As an initial matter, the Court notes that none of the requests are facially objectionable.  The Court will thus address, in turn, the substance of each of these discovery requests and whether Defendant has supported its various objections.

### A.  Interrogatory No. 2.

Interrogatory No. 2 asks for identities of employees who have complained (including administrative charges or filing lawsuits) of sex discrimination, sexual harassment, age discrimination, disability discrimination, and/or retaliation.  (Doc.

22-3, at 1.)  For each such employee, Plaintiff seeks the basis of the complaint, individuals named therein, and complainants' dates of employment and job titles. (*Id.*)  The interrogatory initially sought this information since January 1, 2009, but has since limited the discovery request to similar complaints made against Walmart regional-level managers, market-level managers, and store-level managers within Plaintiff's market from January 1, 2015.  (Doc. 22, at 1.)

Defendant objected that "complained" and "retaliation" are vague and ambiguous.  (Doc. 22-3, at 1.)  It is well-established in this District that a party objecting to discovery on the basis of vagueness or ambiguity bears the burden to support the objections.  *Williams v. Bd of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000); *Nkemakolam v. St. John's Military School*, No. 12-2132-JWL-KGG, 2012 WL 6610980, at *2 (D.Kan. Dec. 18, 2012).  Defendant's discovery response provides no real support for the objection.  Rather, it constitutes nothing more than a boilerplate objection, which are looked on with "disfavor" by courts in this District.  *Smith v. Collins Bus Corp.*, No. 11-2128-JTM-KGG, 2013 WL 589615, at *3 (D. Kan. Feb. 14, 2013) (citing *Sellers v. Wesley Medical Center, LLC*, 11-1340-JAR-KGG, 2012 WL 5362977, at *2 (D. Kan. Oct. 31, 2012).  The Court finds these objections to be without merit considering the common, ordinary meaning of the terms in the context of the events at issue.  The Court thus **overrules** these objections.

Defendant also objects that the interrogatory is overly broad, unduly burdensome, and not proportional to the needs of this case because it "seeks information related to all Walmart associates, without geographic limitation.  The interrogatory also seeks information over a temporal period greater than eleven years, seven years of which predate any purported wrongdoing alleged in the Complaint." (*Id.*, at 1-2.)  Given Plaintiff's revised geographic (her market) and temporal (2015 through the present) limitations, these objections are also **overruled**.

As for any potential overbreadth or proportionality as to the substance of the information sought – similar complaints against other managers – Plaintiff argues that "complaints lodged against regional- and market-level managers, essentially her peers, and store-level managers in Plaintiff's market, are relevant" because Plaintiff asserts "a pattern and culture of discrimination at Walmart" wherein Defendant "protects its male employees with positions of authority at the expense of others." (Doc. 22, at 4.)  Plaintiff also contends that "complaints against store managers and assistant store managers [are] relevant [because it] was part of Plaintiff's job to investigate complaints against store-level managers, and after complaining about her treatment, Defendant prevented her from properly investigating similar complaints at the store level during her employment." (Doc.

22, at 5.)  Plaintiff contends that Defendant's actions caused several complaints to

go unreported and/or investigated.  (*Id*., at 6.)

Defendant responds that it is

> organized into approximately 40 geographic 'regions,'
> with each region subdivided into multiple 'markets.'  In
> turn, there were multiple managers at the regional-level:
> RHRM, Regional Manager, Regional Asset Protection
> Manager, and Regional Health and Wellness Manager.
> Over the five-plus years requested in Plaintiff's
> discovery, Walmart employed 455 such regional-level
> managers, and only Plaintiff's own RHRM would have
> had contact with and/or supervisory authority over
> Plaintiff.

(Doc. 23, at 5.)  The Court is somewhat confused as to the point Defendant is

making with these statements as Plaintiff has clearly "limited the discovery request

to similar complaints made against Walmart regional-level managers, market-level

managers, and store-level managers within Plaintiff's market from January 1,

2015.  (Doc. 22, at 1.)

Defendant also argues that Plaintiff's Complaint does not include any

generalized allegations of a culture of discrimination permeating through

Defendant.  (Doc. 23, at 6-7.)  Defendant is correct that Plaintiff's Complaint "does

not claim anyone else at the regional-, market-, or store-level subjected her to

discrimination or retaliation."  (*Id*., at 7.)  Rather, it focuses solely on the actions of

Rohr and Palmer, making the requested information irrelevant.  (*Id*.)

"Discovery in employment discrimination cases depends heavily upon the particular circumstances of the case."  *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citations omitted).  Additionally, this Circuit "has indicated that discovery in discrimination cases should not be narrowly circumscribed."  *Id*.  That stated,

> in determining the geographic scope of discovery for non-class action complaints, the 'most natural focus is upon the source of the complained discrimination – the employing unit or work unit.'  That focus may be expanded, however, if the plaintiff can show the requested information is 'particularly cogent' to the matter.  Information which may establish a pattern of discrimination is discoverable even when the action seeks only individual relief.  When a motive or intent of a defendant employer is at issue, information concerning its conduct towards employees other than the plaintiff is relevant.

*Stubbs v. McDonald's*, No. 04-2164-CM-DJW, 2005 WL 1958649, at *5 (D. Kan. Aug. 15, 2005) (citations omitted).

In *Stubbs*, however, this conclusion was reached when the information sought by the plaintiff related directly to the supervisors at issue in that lawsuit, ones who the plaintiff alleged "contributed to his unlawful constructive discharge and discriminated against him … ."  *See id.*  Plaintiff's Interrogatory No. 2 goes substantially beyond the individuals about whom she has complained – Rohr and Palmer.  Rather, it seeks information regarding any "similar complaints made against Walmart regional-level managers, market-level managers, and store-level

managers within Plaintiff's market," regardless of the individuals about whom the complaints are made.  (Doc. 22, at 2.)

In *Owens*, on which *Stubbs* relies, Magistrate Judge Waxse held that "[i]n determining the appropriate employing unit of the plaintiff alleging employment discrimination, courts look to the level of the supervisor or supervisors who are primarily responsible for the employment decision regarding the plaintiff and other similarly-situated employees."  221 F.R.D. at 654 (citation omitted).  The relevant determination as to whether the employment decisions at issue were discriminatory is concerned with "the motive and intent of the supervisors who made the employment decisions relating to the plaintiff and other employees … ."  *Id*.

Simply stated, Plaintiff has not established that complaints involving decision-makers or supervisors other than Rohr and/or Palmer have any relevance to the allegations in her Complaint.  As such, the Court agrees with Defendant that the information sought by Interrogatory No. 2 is overly broad, irrelevant, and disproportionate to the case.  Defendant's objections are **sustained** and this portion of Plaintiff's motion is **DENIED**.[2]  The Court notes Defendant has offered to provide – and has produced – information and documents related to complaints about Plaintiff's co-worker Rohr and allegations of retaliation by Plaintiff's

---

[2]  Because the Court has reached this conclusion, it need not address Defendant's objection that it has "no reasonable means by which to search for the requested information."  (*Id.*, at 2.)

supervisor Palmer.  (Doc. 23, at 13.)  The Court finds this production to be sufficient.

### B.  Interrogatory No. 4.

Interrogatory No. 4 asks Defendant to identify all complaints, investigations, or audits, "(formal or informal, and internal to or outside of Defendant's management or Human Resources)" lodged "against, or of, the Defendant" consisting of allegations Defendant or its employees discriminated against an employee based on his or her age, gender, and/or disabilities.  (Doc. 22-3, at 2-3.) For each such complaint, investigation, or audit, Defendant is asked to "identify the person or agency making the allegation, investigating it, or performing an audit (and complete contact information for them), and identify whether the complaint was filed in court and, if it was, provide the name of the court and case number." (*Id.*, at 3.)

Defendant objected that this interrogatory is compound, overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks "information related to all Walmart associates, without geographic limitation" and over too broad of a temporal scope (eleven years).  (Doc. 22-3, at 3.)  While the interrogatory initially sought this information since January 1, 2009, it has since been limited to similar complaints made against Walmart regional-level managers, market-level managers, and store-level managers within Plaintiff's market from

January 1, 2015.  (Doc. 22, at 2.)  The Court thus **overrules** these objections given the revised geographic and temporal limitation.

That stated, the Court finds the substantive information sought by this interrogatory –  all complaints, investigations, or audits from within Plaintiff's market comprising allegations Defendant or its employees discriminated against an employee based on his or her age, gender, and/or disabilities – is overly broad, unduly burdensome, irrelevant, and disproportionate to this case.  For the reasons set forth in the discussion of Interrogatory No. 2, above, Plaintiff has not established that complaints involving decision-makers or supervisors other than Rohr and/or Palmer have any relevance to the allegations in her Complaint. Defendant's objections are **sustained** and the portion of Plaintiff's motion relating to Interrogatory No. 4 is **DENIED**.  The Court again finds Defendant's production of information and documents related to complaints about Rohr and Palmer to be sufficient.  (Doc. 23, at 13.)

### C.    Request No. 7.

Request No. 7 asks for "personnel and/or investigation files, or legal files, of or about any Walmart employees who, within Plaintiff's geographical territory of responsibility, made a claim or complaint they had been discriminated or retaliated against by Walmart or any of its employees based on gender, age, or disability." (Doc. 22-4, at 5.)  Defendant objects that the terms "personnel and/or investigation

files" and "legal files" are vague and ambiguous.  (Doc. 22-4, at 5.)  For the reasons discussed in regard to Interrogatory No. 2, *supra*, the Court finds these boilerplate objections to be without merit considering the common, ordinary meaning of the terms in the context of the events at issue.  The Court thus **overrules** these objections.  That stated, the term "legal files" potentially implicates "materials protected by the attorney client privilege and attorney work product doctrine," as objected by Defendant.  (Doc. 22-4, at 5.)  This objection is **sustained**.

Defendant further objects that the request is "overly broad, unduly burdensome, seeking irrelevant materials, not proportional to the needs of this case, and potentially unnecessarily invades the privacy rights of non-party individuals."  (*Id*.)  As to the issue of privacy rights, the Court notes that the production of private or confidential information is not, in and of itself, a valid reason to withhold discovery as the production could governed by a protective order.  ***High Point SARL v. Sprint Nextel Corp.***, No. 09-2269-CM-DJW, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011).  "'A concern for protecting confidentiality does not equate to privilege.'"  *Id*. (citation omitted).

As with Interrogatories Nos. 2 and 4, this document request has been limited to similar complaints made against Walmart regional-level managers, market-level managers, and store-level managers within Plaintiff's market from January 1,

2015.  (Doc. 22, at 1.)  The Court thus **overrules** Defendant's geographic and temporal objections.

Defendant also contends that "Plaintiff was the Market Human Resources Manager from between 2015 and 2019, and thus she is best suited to identify any such claims or complaints, to the extent they existed."  (*Id.*)  The Court finds Defendant's position to be untenable given that Plaintiff is no longer employed by Defendant, would not have access to relevant documentation, and cannot be expected to rely on her own memory for this information.

Even so, for the reasons set forth in the discussion of Interrogatory No. 2, above, Plaintiff has not established that complaints involving decision-makers or supervisors other than Rohr and/or Palmer have any relevance to the allegations in her Complaint.  "Evidence of how some supervisors other than [the plaintiff-employee's supervisors] treated other employees is not relevant because it cannot yield any inference that the stated reason for plaintiff's [adverse employment action] was pretextual."  *Hinson v. UMB Bank, N.A.*, No. 08-4049-SAC, 2010 WL 2519987, at *4 (D. Kan. June 15, 2010) (holding that such information is not admissible at trial).

The Court acknowledges Plaintiff's argument that the *Hinson* decision, upon which Defendant relies, relates to trial admissibility rather than discoverability, which clearly have different standards.  While that may be, the

Court finds that the analysis in ***Hinson*** is instructive because Plaintiff, even given

the broad scope of discovery, has clearly failed "to establish that such evidence is

logically or reasonably tied to the adverse employment action against [her]."  *Id.*

Given the allegations contained in Plaintiff's complaint, there is simply no

relevance between Plaintiff's theory of the case and the treatment of other

employees by supervisors other than Rohr and Palmer.  Defendant's objections are

sustained and the portion of Plaintiff's motion relating to Request for Production

No. 7 is **DENIED**.  The Court again finds Defendant's production of information

and documents related to complaints about Rohr and Palmer to be sufficient.  (Doc.

23, at 13.)

## III.    Search Terms.

Plaintiff also "seeks information regarding search terms used by Defendant

to gather documents and electronic information regarding decisions about

Plaintiff's performance evaluations, discipline, and/or work assignments."  (Doc.

22, at 2.)  The relevant discovery requests underlying these search terms,

Interrogatory No. 5 and Request for Production No. 6, wherein Plaintiff seeks

information regarding decisions about Plaintiff's performance evaluations,

discipline, and/or work assignments.  (Doc. 22-3, at 3-4; Doc. 22-4, at 4-5.)

Interrogatory No. 5 asks for the following categories of information "[w]ith

respect to Plaintiff's Document Request regarding electronic searches":

a.      Search terms utilized in conducting searches.

b.      Date range or ranges utilized in conducting searches.

c.      Date(s) when searches were conducted.

d.      Specific identity of devices searched (e.g. server, mobile phone, laptop, etc.).

e.      Identity (including contact information) of persons who conducted the searches.

f.      Are all documents responsive to the searches being produced to Plaintiff?

g.      If the answer to the preceding question is No, provide the identity (including contact information) of persons who decided all responsive documents should not be produced, and whether the non-produced documents have been described on a privilege lot produced by Defendant to Plaintiff.

(Doc. 22-3, at 3-4.)  Request No. 6 asks for Defendant's documents and electronic

communications or "responsive hits" that are "responsive to electronic searches."

(Doc. 22-4, at 4.)  The request continues that such electronic searches be

[structured to identify anything with Plaintiff's first name or Plaintiff's last name for the time period January 1, 2015[,] until Defendant received notice of Plaintiff's Charge of Discrimination.  This search is to be conducted on any mobile phones, computers, hard drives, servers, or other electronic devices used for any Walmart business or work purposes by Chad Rohr, Heidi Palmer, and/or any other employee of Walmart [but only employees who gave input into (factual, legal, Human Resources, or otherwise) and/or made decisions about Plaintiff's

performance evaluations, Plaintiff's discipline, and/or
decisions regarding Plaintiff's work assignments].

(Doc. 22-4, at 4.)

Defendant raised overbreadth, burdensomeness, and proportionality

objections to both discovery requests.  Defendant indicated, however, that "the

parties are in the process of meeting and conferring regarding mutually

acceptable search terms, date range, and custodians of ESI."  (Doc. 22-3, at 4; Doc.

22-4, at 4-5.)

As an initial matter, the Court finds that these two discovery requests are

facially relevant, proportionate to the needs of the case, and the requested

information to be discoverable.  Further, in response to Plaintiff's motion,

Defendant does not discuss its objections to the underlying discovery requests, but

rather discusses its concerns with Plaintiff's requested search terms.  (*See*

*generally* Doc. 23.)   Because the ESI search terms are properly tethered to

underlying discovery requests, which the Court has found to be facially relevant,

the Court will discuss the disputed terms.

Plaintiff asks the Court to compel Defendant to use the ESI search terms she

has proposed:

1. Time period: 11/1/2015 – 6/24/2019

2. Custodian: Isberner

      3. Terms: (Chad or Rohr or Heidi or Palmer) and (discrim! or harass! or abus! or hostil! or retaliat! or treat! or gender or age or sex or disab! or 799 or Liberal or ("follow up" or "follow-up" or "followup") or investigation or "let's talk" or "need help")

AND

      1. Time period 1/1/2015-6/24/2019

      2. Custodian: Palmer and Rohr and Weimer

      3. Terms: (Susan or Isberner) and (perform! or eval! or disciplin! or "work assignment" or "Stoney" or termin! or resign! or "open door" or 799 or Liberal or ("follow up" or "follow-up" or "followup) or "investigation" or "let's talk" or "need help.")

(Doc. 22, at 8.)

      Plaintiff requests searches of four custodians:  Plaintiff, Rohr, Palmer, and Rohr's assistant Weimer.  As to the latter three custodians, Plaintiff requests only ESI including her name and the suggested search terms.  (*Id.*)  As for documents for which Plaintiff is the custodian, the responsive documents sought are those including Rohr or Palmer and one of the specific search terms.  (*Id.*)

      Plaintiff indicates that "799," "Stoney," and "Liberal" refer to the Liberal store at which Plaintiff was removed from the investigation.  (*Id.*)  According to Plaintiff, "a search without these terms would omit a large breadth of responsive documents."  (Doc. 22, at 8.)  Plaintiff argues that other search terms (including "termin!" and "let's talk") are "clearly … targeted to identify documents that fall

within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1)."
(*Id.*)  Plaintiff contends that she "recalls using these terms with respect to
escalating issues."  (*Id.*)

Defendant raises three categorical objections to the proposed search terms –
the discovery is temporally overbroad, it is unnecessary to search Karla Weimer's
ESI, and the proposed additional terms are disproportionate to the case.  (*See* Doc.
23, at 16-20.)  Each objection will be discussed in turn.

### A.   "Temporal Window" of ESI Discovery.

First, Defendant argues that the "temporal window" of Plaintiff's search is
overly broad.  (Doc. 23, at 16.)  Plaintiff originally sought information beginning
January 1, 2015, but then agreed to move the "triggering date" to July 1, 2015.
(Doc. 24, at 8.)  Defendant responds that Plaintiff's Complaint "judicially admits"
that the allegedly discriminatory conduct began in November 2016.  (Doc. 23, at
16 (citing Doc. 1, at ¶ 25).)  Defendant continues that Plaintiff's motion "offer[s]
no insight into the basis or need for the 11/1/15 start date."  (*Id.*)  Defendant
continues, "[s]imply put, Plaintiff cannot offer any rationale for expanding the
scope of the already-started ESI search."  (*Id.*)

Plaintiff replies that she "repeatedly informed" Defendant during the
conferral process that she "recalls discrimination occurring in 2015, and paragraph
25 [of her Complaint] never once mentions, suggests, or 'judicially admits' that

November 2016 was the first instance of discriminatory conduct." (Doc. 24, at 9.) She argues that Defendant is "attempting to improperly dictate the factual narrative by assigning a triggering date to discriminatory conduct that is not supported by Plaintiff's presentation of the facts." (*Id.*) She points to the two preceding paragraphs of the Complaint wherein she alleges that "Rohr regularly referred to '[her] as 'that crazy HR lady' or simply 'crazy' in large meetings and during conference calls to demean her role as a woman in the workplace" and "also regularly made comments to [Plaintiff] about how close she was to his mother's age, which he said made him uncomfortable." (*Id.* (citing Doc. 1, at ¶¶ 23, 24).)

The Court agrees that Plaintiff's Complaint does not specifically establish November 2016 as the date the discrimination originated. Further, even the Complaint or other comments by Plaintiff did set such a "triggering date," the Court finds that discovery reaching back a matter of months before such a date would be appropriate and is not overly broad or disproportionate. Defendant's temporal objection is **overruled**.

### B.     Weimer as ESI Custodian.

It is uncontested that Weimer was Rohr's assistant, or as stated by Defendant, "a Market Assistant responsible for administrative duties in the office shared by Rohr and Isberner." (Doc. 23, at  17.) Defendant states that this supports its position that there is "no reason to believe that Weimer would have

sent or received – or otherwise be in possession of – any relevant emails on which Plaintiff, Palmer, or Rohr would not also be recipients." (*Id.*)  In other words, Defendant contends that anything relevant contained in Weimer's email would necessarily be discovered with a search of Rohr, Palmer, and Plaintiff's emails. (*Id.*)

According to Plaintiff, however, because of Weimer's position, she "likely had relevant correspondence with Plaintiff that would not be discoverable through searches of the other custodians in this case." (Doc. 24, at 10.)  Plaintiff has not, however, indicated why such email correspondence would not be discovered through a search of Plaintiff's email.  That stated, Plaintiff continues that "[d]iscovery software should easily allow Defendant to cull any e-mails that are duplicative of the ESI obtained by a search of Rohr, Palmer, and Plaintiff's e-mails." (*Id.*)  Plaintiff also points out that she informed defense she was willing to "limit the temporal scope of a search of Ms. Weimer's e-mails to January 1, 2018, but again, Defendant rejected this proposal." (*Id.*)  Plaintiff also argues that her request to search "only" four custodians is, on its face, not overly broad.

The Court finds that Plaintiff has established that a search of Weimer's email is relevant and proportionate to the needs of the case.  Further, while most, if not all, of the relevant information is likely contained in email from the other three

custodians, the burden on Defendant to search Weimer's email is minimal.
Defendant's objection is **overruled**.

### C.    Proportionality of Proposed Search Terms.

#### 1.    "799" and "Liberal"

It is uncontested the terms "799" and "Liberal" refer to Walmart Store 799
in Liberal, Kansas.  It is also uncontested that Plaintiff was removed from a
discrimination investigation at this store.  Defendant contends that this
investigation and Plaintiff's removal occurred entirely in February 2019, "yet
Plaintiff proposes – without reason – to impose upon Walmart the burden of
searching, pulling, and producing any email sent or received by Palmer or Rohr,
mentioning Store 799 or Liberal, Kansas over a span of 3.5 years."  (Doc. 23, at
18.)  Defendant has offered to search for email with the Liberal store manager's
name "which Defendant believes will capture any relevant emails."  (*Id*.)
Defendant has also proposed limiting the search to February 2019, but received no
response from Plaintiff.  (*Id*.)  Defendant continues that the terms "799" and
"Liberal" are "facially inappropriate, and Plaintiff has been unable to articulate a
reason for expanding the search also to include the store number and city location
for a period covering 2015-2019."  (*Id*.)

The Court finds that the terms "799" and "Liberal" are relevant and
appropriate as they refer to the store number and location of the store at issue.  This

portion of Defendant's objections is **overruled**.  The Court agrees with Defendant, though, that there is no reason to search email for the terms at issue going back to 2015 when it is uncontroverted that the relevant events – the investigation and Plaintiff's removal therefrom – occurred in February 2019.  This portion of Defendant's objections is **sustained**.  The Court limits the search of these terms to calendar year 2019.

> **2.    "Follow Up," "Follow-Up," "Followup," "Investigation," "Let's Talk," and "Need Help."**

Defendant contends that these terms "are expected to return an unreasonable, unmanageable, and disproportionate number of irrelevant hits," particularly given that two of the custodians work in Human Resources.  (Doc. 23, at 18-19.)  The Court acknowledges Defendant's concerns, particularly given the colloquial nature of these terms (with the possible exception of "investigation").

That stated, Plaintiff has explained that she

> only seeks her e-mails to the extent they mention Rohr or Palmer, in addition to one of the suggested search terms. Plaintiff only seeks the three custodians' emails to the extent Plaintiff is mentioned, in addition to one of the suggested search terms.  Plaintiff's counsel consulted Plaintiff regarding the search terms, and she informed counsel that much of the proposed search term language was only used during escalating situations.  These escalating situations were not the norm. Again, out of respect for Defendant's concerns, Plaintiff offered to limit the temporal scope of the search terms Plaintiff found objectionable to January 1, 2018, but Defendant was again not willing to compromise.

(Doc. 24, at 12.)

Given these limitations, the Court instructs Defendant to run the searches as requested beginning January 1, 2018, which is the temporal limitation suggested by Plaintiff.  Defendant's objections are, therefore, **overruled**.  If the searches result in what Defendants finds to be an inordinate number of hits, the parties are instructed to confer regarding additional limitations before seeking further guidance from the Court.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 22) is **GRANTED in part** and **DENIED in part** as more fully set forth above.  All responsive documents ordered to be produced herein shall be produced **within thirty (30) days of the date of this Order**.

**IT IS SO ORDERED.**

Dated this 13th day of October, 2020, at Wichita, Kansas.

/s  KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE